1  SCOTT A. KRONLAND (SBN 171693)
2  JEFFREY B. DEMAIN (SBN 126715)
   REBECCA MORYL LEE (SBN 305119)
3  ALTSHULER BERZON LLP
4  177 Post Street, Suite 300
   San Francisco, CA 94108
5  Telephone: (415) 421-7151
6  Facsimile: (415) 362-8064
   E-mail:  skronland@altber.com
7          jdemain@altber.com
           rlee@altber.com
8

9  Attorneys for the Union Defendants

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  SCOTT WILFORD, *et al.*,                    CASE NO.:  8:18-cv-1169-JLS-DFM

14              Plaintiffs,                      **MEMORANDUM OF POINTS
                                                 AND AUTHORITIES IN
15        v.                                     SUPPORT OF UNION
                                                 DEFENDANTS' MOTION TO
16  NATIONAL EDUCATION                           DISMISS AND IN THE
    ASSOCIATION, *et al.*,                       ALTERNATIVE FOR SUMMARY
17                                               JUDGMENT**
18              Defendants.
                                                 F.R.C.P. 12(b)(1), (b)(6), and 56
19
                                                 Hearing Date:  January 18, 2019
20                                               Hearing Time: 10:30 a.m.
21                                               Location: Courtroom 10A

22                                               Judge:  The Hon. Josephine L. Staton
23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iii

INTRODUCTION .............................................................................................. 1

THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ........................ 2

DISCUSSION .................................................................................................. 2

I.    Plaintiffs' Claims for Prospective Relief Are Moot Because Fair-Share Fee Collection Permanently Ended After *Janus*. ............................ 2

II.    Plaintiffs Cannot Recover Monetary Relief for Pre-*Janus* Fees Under Section 1983 Because the Union Defendants Collected the Fees in Compliance with State Statutes and Controlling Supreme Court Precedent. ........................................................................................ 5

III.    Plaintiffs' State Common Law Claims Are Preempted by the Educational Employment Relations Act. .................................................. 11

IV.    Plaintiffs' State Common Law Claims Also Are Precluded by California Government Code §1159 .................................................... 13

CONCLUSION .............................................................................................. 14

APPENDIX: California Government Code Section 1159

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Board of Education*,
    431 U.S. 209 (1977) ........................................................................... 3, 6

*Agostini v. Felton*,
    521 U.S. 203 (1997) ........................................................................... 10

*Board of Regents of Univ. of Wis. System v. Southworth*,
    529 U.S. 217 (2000) ........................................................................... 6

*Chicago Teachers Union, Local No. 1 v. Hudson*,
    475 U. S. 292 (1986) .......................................................................... 6

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) ........................................................... 7

*Cumero v. PERB*,
    49 Cal.3d 575 (1989) ......................................................... 8, 12, 13, 14

*Danielson v. Inslee*,
    No. 18-cv-5206-RJB, 2018 WL 3917937 (W.D. Wash. Aug. 16, 2018) ........... 3, 5

*Davis v. FEC*,
    554 U.S. 724 (2008) ........................................................................... 5

*Davis v. United States*,
    564 U.S. 229 (2011) ........................................................................... 10

*Ellis v. Railway Clerks*,
    466 U. S. 435 (1984) .......................................................................... 6

*El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*,
    33 Cal.3d 946 (1983) ......................................................................... 12

*Franklin v. Fox*,
    No. C 97-2443 CRB, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ................... 7, 8

*Friedrichs v. Cal. Teachers Ass'n*,
    2014 WL 10076847 (9th Cir. Nov. 18, 2014), *aff'd by an equally divided Court*, 136 S.Ct. 1083 (2016) .......................................... 8, 10

ii

*Friedrichs v. Cal. Teachers Ass'n*,
   2013 WL 9825479 (C.D. Cal. Dec. 5, 2013) ........................................................... 8

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) ........................................................... 5

*Glickman v. Wileman Brothers & Elliott, Inc.*,
   521 U.S. 457 (1997) ........................................................... 6

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ........................................................... 6

*Harris v. Quinn*,
   134 S.Ct. 2618 (2014) ........................................................... 9

*Hoffman v. Inslee*,
   No. C14-200-MJP, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ................... 10

*Janus v. AFSCME, Council 31*,
   138 S.Ct. 2448 (June 27, 2018) ........................................................ *passim*

*Jarvis v. Cuomo*,
   660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) ................... 9

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
   20 F.3d 1250 (3d Cir. 1994) ........................................................... 7

*Keller v. State Bar of Cal.*,
   496 U.S. 1 (1990) ........................................................... 6

*Lamberty v. Connecticut State Police Union*,
   3:15-cv-00378-VAB, 2018 WL 5115559 (D. Conn. Oct. 19, 2018) ................. 3, 5

*Leek v. Washington Unified School Dist.*,
   124 Cal.App.3d 43 (1981) ........................................................... 12

*Lehnert v. Ferris Faculty Assn.*,
   500 U. S. 507 (1991) ........................................................... 7

*Lemon v. Kurtzman*,
   411 U.S. 192 (1973) ........................................................... 9, 11

*Link v. Antioch Unified School Dist.*,
   142 Cal.App.3d 765 (1983) ........................................................... 12

iii

*Locke v. Karass*,
  555 U. S. 207 (2009)..................................................................................6

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982)...........................................................................6, 7, 8

*Payne v. Tennessee*,
  501 U.S. 808 (1991)................................................................................11

*Pinsky v. Duncan*,
  79 F.3d 306 (2d Cir. 1996) .....................................................................7, 9

*San Jose Teachers Ass'n v. Superior Court*,
  38 Cal.3d 839 (1985) ..............................................................................12

*Steffel v. Thompson*,
  415 U.S. 452 (1974)..................................................................................5

*Timbisha Shoshone Tribe v. Dep't of Interior*,
  824 F.3d 807 (9th Cir. 2016) .....................................................................5

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*,
  76 F.3d 692 (6th Cir. 1996) .......................................................................7

*Winner v. Rauner*,
  No. 15 CV 7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016)...........................9

*Wyatt v. Cole*,
  504 U.S. 158, __ (1992).......................................................................6, 7, 8, 9

*Wyatt v. Cole*,
  994 F.2d 1113 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993) ..................7, 10

*Yohn v. Cal. Teachers Ass'n*,
  No. 8:17-cv-202-JLS-DFM, *Order Granting Defs.' Motions to Dismiss
  and Denying Pls.' Motion for Summary Judgment as Moot, Doc.
  No.* 198 (C.D. Cal. Sept. 28, 2018) ..........................................................3, 5, 9, 11

**Federal Statutory Authorities**

42 U.S.C. §1983..................................................................................*passim*

**State Statutory Authorities**

Cal. Gov't Code
  §1159 ................................................................................................. 1, 13
  §1159(a) ........................................................................................... 13, 14
  §§3540-3549.3 ........................................................................................ 12
  §3541.5 ............................................................................................ 12, 13
  §3543(a) .................................................................................................. 12
  §3546 ....................................................................................................... 6
  §3546(a) .................................................................................................. 12

SB 846 ........................................................................................................ 14
  § 1 ......................................................................................................... 13
  §10 ......................................................................................................... 14

**Federal Rules and Regulations**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 3

# INTRODUCTION

Plaintiffs filed this action shortly after *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (June 27, 2018), overruled 40 years of precedent and held that compulsory union fair-share fees are now unconstitutional.  Plaintiffs are California public school or community college district employees who paid fair-share fees prior to *Janus* and who seek two forms of relief.  First, Plaintiffs ask that compulsory fair share fees be declared unconstitutional and enjoined.  Second, Plaintiffs ask that the Union Defendants be required to repay – to a putative class of all non-member public school and community college employees in California – all the fair-share fees the Union Defendants received before *Janus.*

Plaintiffs' claims for prospective relief should be dismissed for lack of subject matter jurisdiction.  The Union Defendants and Plaintiffs' public employers immediately complied with *Janus*, and the collection of compulsory fair-share fees already ended.  Plaintiffs are not currently being required to pay fair-share fees, and there is no likelihood they would be required to do so in the future because *Janus* held such requirements unconstitutional.  Thus, Plaintiffs' claims for prospective relief are moot.

Plaintiffs' claims for retrospective monetary relief should be dismissed as meritless.  Plaintiffs assert a federal law claim under 42 U.S.C. §1983 for refunds of pre-*Janus* fees, but that claim cannot succeed because the Union Defendants received the fees in compliance with California statutes and then-controlling and directly on-point United States Supreme Court precedent that expressly authorized fair-share fees.  A private party is not retrospectively liable under §1983 for having followed the law of the land.  Plaintiffs also assert state common law tort claims for the same relief, but those claims are preempted by California's Educational Employment Relations Act and, in any event, would be barred by California Government Code §1159.

## THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Plaintiffs' First Amended Complaint ("FAC"), Doc. No. 155, is brought on behalf of seven public school or community college district employees against fourteen labor organizations, collectively, the "Union Defendants."  FAC ¶¶1-21.[1] Plaintiffs allege that they are not union members but were obligated pursuant to California law to pay fair-share fees to the Union Defendants as a condition of their public employment.  *Id*. at ¶¶25-26, *see also id.* at ¶43 (alleging that such fees were collected "under color of state law").  Plaintiffs further allege that the compulsory collection of fair-share fees violates their constitutional rights under *Janus*.  *Id*. at pp. 2-3.

On the basis of these allegations, Plaintiffs assert a federal claim under 42 U.S.C. §1983, as well as state common law claims for "conversion" and "restitution of money had and received."  FAC ¶¶41-57.  Plaintiffs seek to represent a class of all current or former California public school or community college district employees who are or were non-members of any of the Union Defendants.  *Id*. at ¶¶31-32. Plaintiffs seek declaratory and injunctive relief against compulsory fair-share fees and retrospective refunds of fees previously collected.  *Id.* at p. 19.

## DISCUSSION

I. **Plaintiffs' Claims for Prospective Relief Are Moot Because Fair-Share Fee Collection Permanently Ended After *Janus*.**

Plaintiffs' claims for prospective relief against compulsory fair-share fees do not present an Article III case or controversy, and therefore should be dismissed

---

[1] National Education Association; American Federation of Teachers; California Teachers Association; California Federation of Teachers; Community College Association; Saddleback Valley Educators Association; Exeter Teachers Association; Savanna District Teachers Association; Certificated Hourly Instructors, Long Beach City College Chapter; Coast Federation of Educators, Local 1911; South Orange County Community College District Faculty Association; Sanger Unified Teachers Association; Orange Unified Education Association; and Mt. San Antonio College Faculty Association, Inc.

2

1   under FRCP 12(b)(1), for the reasons stated in this Court's prior decision in *Yohn*.

2   *See Yohn v. Cal. Teachers Ass'n*, No. 8:17-cv-202-JLS-DFM, Order Granting

3   Defs.' Motions to Dismiss and Denying Pls.' Motion for Summary Judgment as

4   Moot, Doc. No. 198 (C.D. Cal. Sept. 28, 2018); *see also Lamberty v. Connecticut*

5   *State Police Union*, 3:15-cv-00378-VAB, 2018 WL 5115559 (D. Conn. Oct. 19,

6   2018) (dismissing similar claim for prospective relief against fair-share fees for lack

7   of jurisdiction); *Danielson v. Inslee,* No. 18-cv-5206-RJB, 2018 WL 3917937

8   (W.D. Wash. Aug. 16, 2018) (same).

9         **1.**      In *Janus*, the Supreme Court overruled *Abood v. Detroit Board of*

10  *Education*, 431 U.S. 209 (1977), which had upheld the constitutionality of requiring

11  public employees to pay fair-share fees for union representation, and instead held

12  that that practice "violates the First Amendment and cannot continue."  138 S.Ct. at

13  2486.  Upon *Janus*'s announcement, the Union Defendants immediately and

14  unequivocally complied with the new decision.

15        On the day of the *Janus* decision, Defendant California Teachers Association

16  ("CTA") (which accepts fair-share fees on behalf of its national affiliate, National

17  Education Association, as well as most of its local affiliates) wrote to all California

18  school districts with which CTA or those local affiliates have collective bargaining

19  relationships to notify them that they must "immediately cease all payroll

20  deductions of fair share fees, for all fee payers in [the applicable] bargaining unit,"

21  and stop transferring such fees to CTA or its local affiliates, which, "[d]ue to the

22  change in the law," will "no longer collect fair share fees."  Declaration of Wei Pan

23  in Support of Motion to Dismiss ("Pan Decl."), Exh. A; *see also id.* ¶¶ 3-4, 7-10.

24  CTA also sent letters to fair-share fee payers notifying them that they are "no longer

25  legally obligated to pay fair share fees for the union's representational services,"

26  and that CTA was instructing school districts "to comply with the *Janus* decision"

27  by "immediately ceas[ing] payroll deduction of fair share fees."  *Id.*, Exh. B.  Those

28  letters further explained that, if any post-*Janus* fair-share fees have been collected

1  or are subsequently inadvertently collected and transmitted to CTA or its local

2  affiliates, they will be escrowed and refunded, and not used to support union

3  activities.  *See id.*; *see also id.* ¶¶13-14.  CTA also removed the codes for fair-share

4  fees from the data files it transmits to school districts, so no further fair-share fees

5  can be deducted.  *Id.* ¶12.

6       All of Plaintiffs' employers identified in the First Amended Complaint are

7  public school or community college districts for which CTA had handled fee

8  collections for its local affiliate. *Id.* ¶10.  Fair-share fee collections for those

9  bargaining units ended after *Janus*, and no further fair-share fees have been

10  collected.  *Id.* ¶15.  Additionally, the fair-share fee provisions in the collective

11  bargaining agreements for those units have been removed by mutual agreement.  *Id.*

12  ¶14 & Exhs. C-J.  Moreover, CTA sent refunds, with interest, to non-member

13  employees who are paid on a 10-month basis, of all previously collected fair-share

14  fees intended to cover the period from June 27-August 31, 2018.  *Id.* ¶¶16-21.

15       Similarly, the Coast Community College District previously paid fair-share

16  fees for a faculty bargaining unit represented by Coast Federation of Educators,

17  Local 1911 ("Local 1911").  Declaration of Robert Schneiderman in Support of

18  Motion to Dismiss ("Schneiderman Decl."), ¶¶2-3.  Local 1911 notified the District

19  in June 2018 to immediately cease fee deductions for non-members, and neither

20  Local 1911 nor its affiliates, California Federation of Teachers or American

21  Federation of Teachers, received any fees for non-members from the District for the

22  month of June 2018, nor have they received such fees since then.  *Id.* ¶4.  Local

23  1911 and the District also signed a Memorandum of Understanding in July 2018 to

24  eliminate the fair-share fee requirement.  *Id.* ¶5 & Exh. A.

25       Meanwhile, the PERB General Counsel has announced that California

26  statutes providing for the deduction of fair-share fees are unenforceable, *see* Doc.

27  No. 54-1, and the California Attorney General has issued an Advisory about *Janus*

28  explaining that "a California public-sector employer may no longer automatically

1   deduct a mandatory agency fee from the salary or wages of a non-member public

2   employee who does not affirmatively choose to financially support the union."

3   Declaration of Scott A. Kronland, Exh. B.

4      **2.**      For a federal court to have subject matter jurisdiction, Article III

5   requires an actual, live controversy between the parties at each stage of the

6   proceedings. *Timbisha Shoshone Tribe v. Dep't of Interior*, 824 F.3d 807, 812 (9th

7   Cir. 2016); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir.

8   2005) (en banc) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)).  And

9   Plaintiffs must establish Article III jurisdiction for each form of relief they seek.

10  *Davis v. FEC,* 554 U.S. 724, 734 (2008).

11      There is no longer a live controversy about the collection of compulsory fair-

12  share fees, which ceased immediately after *Janus* in response to that decision.  The

13  Union Defendants were following the law in good faith before *Janus*, and they

14  immediately and unequivocally complied with *Janus* when the Supreme Court

15  changed the law.  Likewise, Plaintiffs' public employers unequivocally stopped

16  collecting any compulsory fair-share fees.  As this Court held in *Yohn*, "the

17  challenged conduct of collecting agency fees cannot be reasonably expected to

18  recur" given the Supreme Court's ruling in *Janus* and, therefore, Plaintiffs' claims

19  for prospective relief are moot.  *Yohn*, Doc. No. 198, at 7; *see also Lamberty*, 2018

20  WL 5115559 at *6-9; *Danielson*, 2018 WL 3917937 at *1-3.

21      **II.      Plaintiffs Cannot Recover Monetary Relief for Pre-*Janus* Fees**

22              **Under Section 1983 Because the Union Defendants Collected the**
              **Fees in Compliance with State Statutes and Controlling Supreme**

23              **Court Precedent.**

24      Plaintiffs also seek the refund of pre-*Janus* fair-share fees pursuant to 42

25  U.S.C. §1983.  *See* FAC at p. 19, ¶¶D & E.  But, as Plaintiffs acknowledge, the

26  collection of fair-share fees was authorized by California statute, *see* FAC ¶¶25-26.

27  And before *Janus*, the Supreme Court had squarely held, and re-affirmed many

28  times, that requiring public employees to pay fair-share fees as a condition of public

5

1  employment was constitutional.[2]  It is well-established that when private parties act

2  in good-faith reliance on presumptively valid state laws, they have a complete

3  defense to §1983 liability.  Because the Union Defendants received pre-*Janus* fair-

4  share fees in accordance with a California statute, FAC ¶¶25-26 (citing Cal. Gov't

5  Code §3546), that was constitutional under then-controlling Supreme Court

6  precedent, they are not retrospectively liable here.

7       **1.**     Section 1983 provides a cause of action for the deprivation of an

8  individual's "rights, privileges, or immunities secured by the Constitution and laws"

9  under color of state law.  42 U.S.C. §1983.

10       In certain circumstances, private parties may be sued under §1983 if they act

11  under color of state law.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

12  While public officials exercising discretionary duties who face §1983 claims are

13  entitled to "qualified immunity" from liability unless their conduct violated "clearly

14  established statutory or constitutional rights of which a reasonable person would

15  have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court

16  has held that private parties cannot invoke "qualified immunity," *Wyatt v. Cole*, 504

17  U.S. 158, 168-169 (1992).

18       But private parties are entitled to a similar defense to monetary liability when

19  they are relying on presumptively valid state laws.  *Every* member of the *Wyatt* Court

20  concluded that *some* defense to monetary liability, whether qualified immunity or a

21  good faith defense, is available to private defendants.  The three dissenting Justices

22

23  _____

24       [2] *Abood,* 431 U.S. at 232; *Locke v. Karass*, 555 U. S. 207, 213-14 (2009);
*Lehnert v. Ferris Faculty Assn.*, 500 U. S. 507, 519 (1991); *Chicago Teachers*

25  *Union, Local No. 1 v. Hudson*, 475 U. S. 292, 301-02 (1986); *Ellis v. Railway*

26  *Clerks*, 466 U. S. 435, 455-57 (1984); *see also Keller v. State Bar of Cal.*, 496 U.S.
1, 9-17 (1990); *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S.

27  217, 230-32 (2000); *Glickman v. Wileman Brothers & Elliott, Inc.*, 521 U.S. 457,

28  471-73 (1997).

1    concluded that qualified immunity itself is available to private defendants, while the

2    majority opinion observed that such defendants "could be entitled to an affirmative

3    defense based on good faith." *Id.* at 169.  The Court's acknowledgement of the

4    availability of a good faith defense was elaborated in separate opinions joined by a

5    majority of the Court.  *See id.* at 169 (Kennedy, J., joined by Scalia, J., concurring);

6    *id.* at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting); *see also*

7    *Lugar*, 457 U.S. at 942 n.23 (acknowledging unfairness of imposing damages

8    liability on private parties who "innocently make use of seemingly valid state laws").

9         On the basis of these opinions, the Fifth Circuit squarely held on remand "that

10   private defendants sued on the basis of *Lugar* may be held liable for damages under

11   §1983 only if they failed to act in good faith in invoking the unconstitutional state

12   procedures…."  *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993), *cert. denied*,

13   510 U.S. 977 (1993).  Since *Wyatt*, this holding has been adopted by every Court of

14   Appeals to address this issue—including the Ninth Circuit.  *See Clement v. City of*

15   *Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008) (recognizing and applying good

16   faith defense); *Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Vector*

17   *Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698-99 (6th Cir.

18   1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d

19   Cir. 1994); *see also Franklin v. Fox*, No. C 97-2443 CRB, 2001 WL 114438, at *6

20   (N.D. Cal. Jan. 22, 2001) (noting "universal[]" recognition of good faith defense).

21        In *Clement*, a towing company that obeyed a police order to tow a car that was

22   parked on private property with the property owner's permission was granted

23   judgment in the car owner's §1983 suit, based on the company's adherence to

24   governing law.  *Clement*, 518 F.3d at 1093.  The Ninth Circuit affirmed, reasoning

25   that the company had done "its best to follow the law" and that its actions "appeared

26   to be permissible under both local ordinance and state law."  *Id.* at 1097.

27        The availability of the good faith defense in §1983 actions recognizes the

28   inequity of holding private parties liable for damages for acting under color of state

1    law when government officials would be immune from liability for the same

2    conduct.  *See, e.g.*, *Wyatt*, 504 U.S. at 168 ("[P]rinciples of equality and fairness may

3    suggest … that private citizens … should have some protection from liability, as do

4    their government counterparts[.]"); *Lugar*, 457 U.S. at 942 n.23 (unfairness to

5    private parties of being held liable for "mak[ing] use of seemingly valid state laws"

6    "should be dealt with … by establishing an affirmative defense" and "[a] similar

7    concern is at least partially responsible for the availability of a good faith defense, or

8    qualified immunity, to state officials").  As Judge Charles Breyer has explained, it

9    would be "manifestly unfair to hold that the state actor – whose participation is

10   required for there to be a §1983 violation at all – is entitled to qualified immunity,

11   but hold the private actor … liable for the plaintiff's damages."  *Franklin*, 2001 WL

12   114438, at *5.  As these courts also recognize, the good faith defense is fully

13   consistent with the purpose of §1983 "to deter state actors from using the badge of

14   their authority to deprive individuals of their federally guaranteed rights," *Wyatt*, 504

15   U.S. at 161, because if a state actor's conduct is consistent with then-binding

16   precedent, the threat of §1983 liability "will not deter [that] conduct," *Franklin*, 2001

17   WL 114438, at *6.

18          **2.**      Plaintiffs' §1983 claim seeks the refund of fair-share fees collected

19   before *Janus* issued, at a time when California statues and controlling U.S. Supreme

20   Court precedent expressly allowed the collection of such fees.  This Court, the Ninth

21   Circuit, and the California Supreme Court had all ruled that California's statutory

22   fair-share fee system was constitutional.  *See Friedrichs v. Cal. Teachers Ass'n*,

23   2014 WL 10076847 (9th Cir. Nov. 18, 2014), *aff'd by an equally divided Court*, 136

24   S.Ct. 1083 (2016); *Friedrichs v. Cal. Teachers Ass'n*, 2013 WL 9825479 (C.D. Cal.

25   Dec. 5, 2013); *Cumero v. PERB*, 49 Cal.3d 575, 581-82 (1989).  As this Court

26   recognized, "prior to *Janus*," the Union Defendants "were merely following the 40-

27   year-precedent of *Abood*" and its progeny, and the state laws premised on those

28   precedents that were in effect at the time the fair-share fees were collected.  *Yohn*,

8

Doc. No. 198, at 6.  Thus, the Union Defendants have a complete defense to retrospective liability.

The Union Defendants were entitled, when entering into contractual agreements with public employers that provided for fair-share fees, to rely upon California state law and U.S. Supreme Court precedent that was then binding on public employers, the Union Defendants, Plaintiffs, and every lower court, and that was repeatedly reaffirmed in the decades after its issuance.  *See* n.2, *supra*.  As the Supreme Court has emphasized, "state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."  *Lemon v. Kurtzman*, 411 U.S. 192, 209 (1973); *see also Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring) ("[A] private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law."); *Pinsky*, 79 F.3d at 313 ("[I]t is objectively reasonable to act on the basis of a statute not yet held invalid.").

There is nothing unique about the fair-share fee context of this lawsuit that would prevent application of the good faith defense.  To the contrary, after *Harris v. Quinn*, 134 S.Ct. 2618 (2014), held that states could not require Medicaid-funded homecare providers to pay fair-share fees as a condition of employment, every court to consider whether homecare unions had to return fees collected pre-*Harris* applied the good faith defense to hold that the unions that received those fees prior to *Harris* were not subject to retrospective liability under §1983.  *See Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) (holding that union that had relied on state law in collecting fair-share fees from homecare workers before *Harris* was not liable to pay refunds under §1983); *Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016) (same); *Hoffman v. Inslee*, No. C14-200-MJP, 2016 WL 6126016, at *4 (W.D. Wash. Oct. 20, 2016) (same).  So too here.

The good faith defense to liability applies regardless of whether the Union Defendants could have "predicted" the result in *Janus*—although they could not. Courts have applied the good faith defense when private parties relied upon state statutes that had not been invalidated by the courts, even where (unlike here) there was no governing precedent holding the law constitutional, and, indeed, even where the governing case law was not clear and even suggested that the legal authority relied on by the defendants was in jeopardy. *See, e.g.*, *Wyatt*, 994 F.2d at 1120-21 (good faith defense applied where defendant relied upon Mississippi replevin statute that had not yet been invalidated but that had been placed in "legal jeopardy" by prior Circuit opinion invalidating similar Georgia statute); *cf. Davis v. United States*, 564 U.S. 229, 241 (2011) (Alito, J.) (declining to apply the exclusionary rule to evidence obtained through a search consistent with then-binding Circuit precedent because police were entitled to rely on that precedent, even though its reasoning had been questioned, and because the Court would not "penalize the officer for the appellate judges' error") (alterations and citation omitted).

The Supreme Court has emphatically rejected the notion that anyone is entitled to, much less *required to*, anticipate the overruling of its precedents, even when those precedents have been criticized in later cases. Rather, lower courts *must* "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). While some Justices recently had expressed "misgivings about *Abood*," *Janus*, 138 S.Ct. at 2484, the Court had twice *declined* to overrule *Abood* in the four years before the *Janus* decision, so *Abood* unquestionably remained the governing law of the land, *see Harris*, 134 S.Ct. at 2638; *Friedrichs*, 136 S.Ct. 1083.

Exposing private parties to potentially catastrophic liability for relying on a state law that is indisputably valid under then-binding Supreme Court precedent solely because some Justices have expressed doubt about the precedent's reasoning would be both unworkable and highly corrosive to the rule of law. "[S]tatutory or

10

1   even judge-made rules of law are hard facts on which people must rely in making

2   decisions and in shaping their conduct." *Lemon*, 411 U.S. at 199.  If the good faith

3   defense depended upon the presence or absence of dicta criticizing a particular prior

4   precedent, however, private parties would no longer be able to rely upon the Court's

5   decisions, and would instead be required to predict the way that the Justices

6   (including sometimes, as in *Janus*, a new Justice who has never before opined on the

7   issue) might vote in a future case, thereby undermining the entire system of

8   precedent that forms the basis of our legal system.  *See, e.g.*, *Payne v. Tennessee*,

9   501 U.S. 808, 827 (1991) (explaining that this system "promotes the evenhanded,

10   predictable, and consistent development of legal principles, fosters reliance on

11   judicial decisions, and contributes to the actual and perceived integrity of the judicial

12   process").

13         In sum, the fair-share fees the Union Defendants received prior to the issuance

14   of *Janus* were collected in good faith pursuant to a California statute that was valid

15   under then-controlling and directly on-point United States Supreme Court, Ninth

16   Circuit, and California Supreme Court precedent.  After *Janus* was issued, the Union

17   Defendants continued to act in good faith, by immediately and unequivocally

18   complying with the new decision, including by refunding with interest any fair-share

19   fees received to cover the time period after the decision.  *See* pp. 3-5, *supra*; *see also*

20   *Yohn*, Doc. No. 198, at 6.  The Union Defendants cannot be held retrospectively

21   liable under §1983 for having faithfully followed the law.

### III.   Plaintiffs' State Common Law Claims Are Preempted by the Educational Employment Relations Act.

24         In addition to asserting a federal §1983 claim, Plaintiffs also assert state

25   common law claims for "conversion" and "restitution of money had and received."

26   FAC ¶¶41-57.  But any common law claims regarding fair-share fees are preempted

27   by California's Educational Employment Relations Act ("EERA"), Cal. Gov't Code

28   §§3540-3549.3, and any claims under EERA are subject to the exclusive jurisdiction

1   of the Public Employment Relations Board ("PERB") and must therefore be

2   dismissed.

3       EERA governs labor relations for public school and community college

4   district employees.  PERB has *exclusive jurisdiction* to determine whether conduct of

5   an employer or an employee organization violates EERA and, if so, what the remedy

6   shall be.  Cal. Gov't Code §3541.5.  In order to protect PERB's exclusive

7   jurisdiction, the California Supreme Court has held that EERA broadly preempts

8   state tort claims that allege conduct that is even "arguably protected or prohibited

9   under EERA."  *El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*, 33 Cal.3d 946,

10  960 (1983).  The Court explained that "what matters is whether the underlying

11  conduct on which the suit is based – however described in the complaint – *may* fall

12  within PERB's exclusive jurisdiction."  *Id.* at 954 n.13 (emphasis added).

13      The alleged conduct of collecting fair-share fees pre-*Janus* was at least

14  arguably protected by EERA because EERA expressly authorizes the collection of

15  fair-share fees.  Cal. Gov't Code §§3543(a), 3546(a); *see also Cumero*, 49 Cal.3d at

16  587 ("EERA … contains provisions expressly … allowing … for compulsory

17  nonmember service fees").  California courts have held that challenges to fair-share

18  fees are subject to PERB's exclusive jurisdiction.  *See Leek v. Washington Unified*

19  *School Dist.*, 124 Cal.App.3d 43, 51-54 (1981); *Link v. Antioch Unified School Dist.*,

20  142 Cal.App.3d 765, 767-69 (1983).  And the California Supreme Court has

21  expressly agreed with the reasoning of those decisions.  *See San Jose Teachers Ass'n*

22  *v. Superior Court*, 38 Cal.3d 839, 863 (1985) ("We agree with the Court of Appeal's

23  view in those cases.").

24      Moreover, if Plaintiffs wish to argue that these specific EERA provisions

25  should be treated as retroactively void in light of *Janus*, then the alleged conduct of

26  collecting fair-share fees pre-*Janus* would at least arguably have been prohibited

27  under EERA.  Indeed, the California Supreme Court explained in *Cumero* that PERB

28  had interpreted the general provisions of EERA to preclude the collection of fair-

1  share fees, except as "that general provision is modified … by the more particular

2  provisions of [§§3440.1(i)(2) and 3546], authorizing organizational security

3  arrangements." *Cumero*, 49 Cal.3d at 584. The "[i]nterpretation of the EERA falls

4  squarely within PERB's legislatively designated field of expertise," *id.* at 587

5  (citation, internal quotation marks omitted), so how to interpret and apply EERA

6  after *Janus* is initially and exclusively a question for PERB.

7      By adopting EERA, the California Legislature completely displaced any

8  common law claims related to the collection of fair-share fees, and any state law

9  claims regarding the collection of such fees must be presented to PERB, because

10  "[t]he initial determination as to whether … charges or unfair practices are justified,

11  and, if so, what remedy is necessary to effectuate the purposes of [EERA], shall be a

12  matter within the exclusive jurisdiction of [PERB]". Cal. Gov't Code §3541.5. The

13  Court must therefore dismiss Plaintiffs' state law claims as preempted.

## IV.   Plaintiffs' State Common Law Claims Also Are Precluded by California Government Code §1159.

16      Even if this Court, rather than PERB, were the proper forum for addressing

17  Plaintiffs' assertions of state law liability for the prior collection of fair-share fees

18  (which it is not for the reasons previously explained), the California Legislature's

19  recent adoption of Government Code §1159 confirms that there is no such liability

20  under state law. Section 1 of Senate Bill 846, which was signed by the Governor on

21  September 14, 2018 and immediately effective, provides in relevant part:

22      Section 1159 is added to the Government Code, to read:

23      1159. (a) The Controller, a public employer, an employee
24      organization, or any of their employees or agents, shall not be liable
       for, and shall have a complete defense to, any claims or actions under
25      the law of this state for requiring, deducting, receiving, or retaining
       agency or fair share fees from public employees, and current or
26      former public employees shall not have standing to pursue these
       claims or actions, if the fees were permitted at the time under the laws
27      of this state then in force and paid, through payroll deduction or
       otherwise, prior to June 27, 2018.
28

13

(b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.[3]

Under this provision, the Union Defendants cannot be held liable under state law for the collection of pre-*Janus* fair-share fees.  They have a "complete defense" to Plaintiffs' state law claims for refunds, regardless of the cause of action asserted; and Plaintiffs lack "standing to pursue the[ir] claims …."  Cal. Gov't Code §1159(a).  As such, all of Plaintiffs' state law claims are precluded by SB 846 as a matter of law.  And this result makes perfect sense, because the California Legislature had previously expressly authorized fair-share fees by statute, thereby displacing any "law of this state," including the common law theories on which Plaintiffs now mistakenly seek to proceed.

## CONCLUSION

For the reasons discussed above, the Court should dismiss Plaintiffs' claims for prospective relief for lack of jurisdiction and dismiss Plaintiffs' claims for retrospective monetary relief with prejudice.

---

[3]  The full text of California Government Code §1159 is appended to this brief.  A copy of SB 846 is attached as Kronland Decl., Exh. A.  Because SB 846 was a budget trailer bill, its "effective date" was the date it was signed by the Governor.  *See* SB 846, Section 10.

14

Dated:  November 15, 2018          Respectfully submitted,


ALTSHULER BERZON LLP
Scott A. Kronland
Jeffrey B. Demain
Rebecca Moryl Lee


By:  */s/ Scott A. Kronland*
          Scott A. Kronland

Attorneys for Union Defendants

# **ATTACHMENT**

**California Government Code Section 1159**

(a) The Controller, a public employer, an employee organization, or any of their employees or agents, shall not be liable for, and shall have a complete defense to, any claims or actions under the law of this state for requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June 27, 2018.

(b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.

(c) The enactment of this section shall not be interpreted to create the inference that any relief made unavailable by this section would otherwise be available.

(d) For purposes of this section:

(1) "Employee organization" means any organization that functioned as an exclusive collective bargaining representative for public employees under any statute, ordinance, regulation, or other state or local law, and any labor organization with which it was affiliated.

(2) "Public employer" means any public employer, including, but not limited to, the state, the Regents of the University of California, the Trustees of the California State University, the California State University, the Judicial Council, a trial court, a city, a county, a city and county, a school district, a community college district, a transit district, any public authority, public agency, or any other political subdivision or public corporation, or any other entity considered a public employer for purposes of the labor relations statutes of California.

(e) The Legislature finds and declares:

(1) Application of this section to pending claims and actions clarifies existing state law rather than changes it. Public employees who paid agency or fair share fees as a condition of public employment in accordance with state law and Supreme Court precedent prior to June 27, 2018, had no legitimate expectation of receiving that money under any available cause of action. Public employers and employee organizations who relied on, and abided by, state law and Supreme Court precedent in deducting and accepting those fees were not liable to refund them. Agency or fair share fees paid for collective bargaining representation that employee organizations were obligated by state law to provide to public employees. Application of this

section to pending claims will preserve, rather than interfere with, important reliance interests.

(2) This section is necessary to provide certainty to public employers and employee organizations that relied on state law, and to avoid disruption of public employee labor relations, after the Supreme Court's decision in Janus v. American Federation of State, County, and Mun. Employees, Council 31 (2018) 138 S.Ct. 2448.

(Added by Stats. 2018, Ch. 405, Sec. 1. (SB 846) Effective September 14, 2018.)