Bradford G. Hughes (State Bar No. 247141)
bhughes@ClarkHill.com
CLARK HILL LLP
1055 W. 7th Street, 24th Floor
Los Angeles, California 90017
Telephone: 213.891.9100
Facsimile: 213.488.1178

Gregory N. Longworth (*Pro Hac Vice*)
GLongworth@ClarkHill.com
CLARK HILL PLC
200 Ottawa NW, Suite 500
Grand Rapids, Michigan 49503
Telephone: 616.608.1100
Facsimile: 616.608.1199

Daniel J. Dulworth (*Pro Hac Vice*)
DDulworth@ClarkHill.com
CLARK HILL PLC
500 Woodward Ave., Suite 3500
Detroit, MI 48226
Telephone: 313. 965.8300
Facsimile: 313.965.8252

John J. Bursch (*Pro Hac Vice*)
jbursch@burschlaw.com
BURSCH LAW PLLC
9339 Cherry Valley Ave. SE, #78
Caledonia, MI 49316
Telephone: 616.450.4235

Attorneys for Plaintiffs and Proposed Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SCOTT WILFORD, *et al.*,<br><br>                                Plaintiffs,<br><br>        v.<br><br>NATIONAL EDUCATION ASSOCIATION OF THE UNITED STATES; *et al.*,<br><br>                                Defendants. | Case No. 8:18-cv-1169<br><br>**PLAINTIFFS' RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

221195338.2 95520/336552

# TABLE OF CONTENTS

**ARGUMENT** ................................................................................................ 1

**I.**    *Janus* applies retroactively to events occurring before it was decided. ....................................................................................................... 1

**II.**   *Janus* renders Gov't Code § 3546 void *ab initio*. ............................ 4

**III.**  Under the declaratory theory of law, the Unions' supposed reliance on *Abood* does not protect them. ....................................... 5

**IV.**   Gov't Code § 1159 is unconstitutional. ................................................ 6

    **A.**    Gov't Code § 1159 changed the law. ......................................... 6

    **B.**    The Attorney General misquotes *Landgraf*. ........................... 7

    **C.**    The Attorney General's attempt to distinguish *Logan* is futile. ........................................................................................... 7

    **D.**    The Attorney General's reliance on *Ileto* is misplaced. ........ 9

    **E.**    The Attorney General's attempts to distinguish Plaintiffs' California cases are misplaced. ................................................. 9

    **F.**    *Los Angeles County v. Superior Court* does not change the outcome. ...................................................................................... 10

        **1.**    The Law Revision Commission's report supports Plaintiffs. ..................................................................... 11

        **2.**    *Flournoy v. State* supports Plaintiffs. ..................... 12

        **3.**    The Attorney General and the Unions point to no supportive California case law. ................................. 13

    **G.**    Gov't Code § 1159 violates substantive due process. ........... 13

    **H.**    The Takings Clause operates independent of due process. ................................................................................... 14

    **I.**    Gov't Code § 1159 violates Cal. Const., art. IV, § 9. .................... 14

    **J.**    Gov't Code § 1159 violates the separation-of-powers doctrine. .................................................................................... 17

**CONCLUSION** ....................................................................................... 17

# TABLE OF AUTHORITIES

Cases

*Abood v. Detroit Bd. of Educ.*
    431 U.S. 209 (1977) ............................................................................... 1, 5

*Accord County of Los Angeles v. Faus*
    48 Cal.2d 672 (1957) ............................................................................. 3, 4

*Alaei v. Rockstar, Inc.*
    224 F. Supp. 3d 992 (S.D. Cal. 2016) ..................................................... 10

*Brosnahan v. Brown*,
    32 Cal.3d 236 (1982) ......................................................................... 14, 15

*California Employment Stabilization Comm'n v. Payne*
    31 Cal.2d 210 (1947) ............................................................................... 9

*Callet v. Alioto*
    210 Cal. 65 (1930) ................................................................. 8, 10, 11, 12

*Chavez v. Martinez*
    538 U.S. 760 (2003) ................................................................................. 6

*Chevron Oil Co. v. Huson*
    404 U.S. 97 (1971) ................................................................................... 2

*Chicot County Drainage Dist. v. Baxter State Bank*
    308 U.S. 371 (1940) ................................................................................. 2

*Dascola v. Ann Arbor*
    22 F. Supp. 3d 736 (E.D. Mich. 2014) ..................................................... 4

*Davis v. U.S.*
    564 U.S. 229 (2011) .............................................................................. 5, 6

*Ex parte Siebold*
    100 U.S. 371 (1880) ................................................................................. 4

*Flournoy v. California*
    230 Cal.App.2d 520 (1964) ....................................................... 10, 11, 12

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

*Governing Bd. of Rialto Unified Sch. Dist.*

    18 Cal.3d 819 (1977) ..................................................................10

*Harbor v. Deukmejian*

    43 Cal.3d 1078 (1987) ................................................14, 15, 16

*Harlow v. Fitzgerald*

    457 U.S. 800 (1982) .....................................................................3

*Harper v. Virginia Dep't of Taxation*

    509 U.S. 86 (1993) ...................................................................2, 3

*Hung v. Wang*

    8 Cal. App. 4th 908 (1992) .......................................................10

*Ileto v. Glock, Inc.*

    565 F.3d 1126 (9th Cir. 2009), *cert denied*, 560 U.S. 924

    (2010) ......................................................................................9, 14

*In re Marriage of Buol*

    39 Cal.3d 751 (1985) .................................................................10

*In re National Sec. Agency Telecomm. Records Litig.*

    671 F.3d 881 (9th Cir. 2011) .....................................................17

*James B. Beam Distilling Co. v. Georgia*

    501 U.S. 529 (1991) ...............................................................1, 2, 5

*Janus v. AFSCME*

    138 S. Ct. 2448 (2018) .......................................................passim

*Journigan v. Duffy*

    552 F.2d 283 (9th Cir. 1977) ......................................................4

*Landgraf v. USI Film Prods.,*

    511 U.S. 244 (1994) ...............................................................7, 14

*Lemon v. Kurtzman*

    411 U.S. 192 (1973) .....................................................................2

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

221195338.2 95520/336552

*Logan v. Zimmerman Brush Co.*
    455 U.S. 422 (1982) ............................................................................. 7, 8, 10

*Los Angeles County v. Superior Court*
    62 Cal.2d 839 (1965) ............................................................................. 10, 12

*Marbury v. Madison*
    1 Cranch 137 (1803) ............................................................................. 5

*Martinez v. California*
    444 U.S. 277 (1980) ............................................................................. 8

*Missouri P. Ry. Co. v. Nebraska*
    164 U.S. 403 (1896) ............................................................................. 13

*Norton v. City of Pamona*
    5 Cal.2d 54 (1935) ............................................................................. 11

*Norton v. Shelby County*
    118 U.S. 425 (1886) ............................................................................. 4

*Reynoldsville Casket Co. v. Hyde*
    514 U.S. 759 (1995) ............................................................................. 3, 4

*Richardson v. U.S.*
    465 F.2d 844 (3d Cir. 1972) ............................................................................. 4

*Rosefield Packing Co. v. Superior Court*
    4 Cal.2d 120 (1935) ............................................................................. 9

*Tulsa Prof'l Collection Servs., Inc. v. Pope*
    485 U.S. 478 (1988) ............................................................................. 8

*U.S. v. Carveri*
    260 U.S. 482 (1923) ............................................................................. 9

*United States v. Richardson*
    418 U.S. 166 (1974) ............................................................................. 4

*Vegetable Oil Prods. Co. v. Superior Court*
    213 Cal. App. 2d 252 (1963) ............................................................................. 9, 10

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

*Wells Fargo & Co. v. City and County of San Francisco*

    25 Cal.2d 37 (1944)...................................................................................9, 12

*Wexler v. City of Los Angeles*

    110 Cal.App.2d 740 (1952).....................................................................11, 12

*Wyatt v. Cole*

    504 U.S. 161 (1992) ......................................................................................3

Statutes

Government Code § 1159...............................................................................passim

Government Code § 19230................................................................................16

Government Code § 19232................................................................................16

Government Code § 19236................................................................................16

Government Code § 19237................................................................................16

Government Code § 31552.5.............................................................................16

Government Code § 3546.............................................................................5, 7

Health & Safety Code § 101853.1....................................................................16

Public Contract Code § 10298.........................................................................16

Constitutional Provisions

Cal. Const., art. IV, § 12(e) ..............................................................................17

Cal. Const., art. IV, § 9 ........................................................................14, 16, 17

Other Authorities

5 Cal. Law Revision Comm'n Rep. 528-529 ...................................................11

Senate Bill 846.............................................................................................15, 16

*The Supreme Court and the Constitutionality of Retroactive*

*Legislation*, 73 HARV.L.REV. 692, 697 (1960)...........................................12

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

# ARGUMENT

## I.   *Janus* applies retroactively to events occurring before it was decided.

The Attorney General raises an important issue on page 18 of his brief: whether *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), applies retroactively to events that took place *before* the case was decided on June 27, 2018.  Specifically, was it unconstitutional for the Unions to collect fair-share fees from Plaintiffs before June 27, 2018?  The Attorney General says no, but he is wrong.

Notably, *Janus* does not say that it applies only prospectively.  Instead, the Attorney General surmises this from the statement "States and public-sector unions may no longer extract agency fees from nonconsenting employees."  *Id.* at 2486. But the only question *Janus* considered was whether *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977), should be overruled and public-sector agency fee arrangements declared unconstitutional.  The Supreme Court did not consider retroactivity; indeed, the case has been remanded to the Northern District of Illinois where this issue is now being litigated.

Giving *Janus* retroactive effect is required – or at least presumed – under a trio of Supreme Court cases.  In *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), Justice Souter's judgment of the Court described the three options concerning whether a Supreme Court decision applies retroactively:

- "First, a decision may be made **fully retroactive**, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations."  *Id.* at 535 (1991) (op. of Souter, J.) (emphasis added).  "This practice is overwhelmingly the norm[.]"  *Id.*  Retroactivity applies even to cases not yet filed when the decision is rendered.  *Id.* at 542-543.

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

- "Second, there is the **purely prospective** method of overruling, under which a new rule is applied neither to the parties in the lawmaking decisions nor to those others against or by whom it might be applied to conduct or events occurring before that decision." *Id.* at 535 (emphasis added). Examples of this approach include *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940), and *Lemon v. Kurtzman*, 411 U.S. 192 (1973).[1] *See id.* at 536.

- "Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Id.* at 537. Justice Souter referred to this method as **modified, or selective, prospectivity**. *Id.*

The Court held that modified, or selective, prospectivity was unconstitutional because it treated similarly-situated persons unequally. *Id.* at 543; *id.* at 548 (Scalia, J., concurring). Justice Scalia's concurrence opined that pure prospectivity was also unconstitutional, though a majority neither endorsed nor rejected his position. *See id.* at 549 (Scalia, J., concurring). Writing for himself and Justices Blackmun and Marshall, Justice Scalia opined that the declaratory theory of law compelled full retroactive application of a new decision. (See Argument II for discussion of the declaratory theory of law.)

The Supreme Court addressed retroactivity again two years later in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993). *Harper* holds: "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in

---

[1] The Attorney General cites *Lemon* for the proposition that "the Supreme Court has declined to make its holdings retroactive where reliance on the now-overruled law in question was done so in good faith." The trio of cases discussed here reject this argument.

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

221195338.2 95520/336552

all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Id.* at 97.   The concurring and dissenting opinions make clear that the rule applies even if the new decision "overrul[es] clear past precedent on which litigants may have relied" or "decid[es] an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 110-111 (Kennedy, J., concurring); *id.* at 123 (O'Connor, J., dissenting). *Accord County of Los Angeles v. Faus*, 48 Cal.2d 672, 680-681 (1957) ("It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation[.]").

Finally, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 759 (1995), holds that, even though a court has "a degree of legal leeway in fashioning remedies for constitutional ills," a court may *not* refuse to apply a prior decision retroactively. *Id.* at 752-754.   The Court held that there are few exceptions to *Harper*'s rule of retroactivity, only one of which is even remotely relevant to this case:   qualified immunity, which "reflects *both* reliance interests and other significant policy justifications" and "permits government officials to rely upon old law." *Id.* at 757-758.   Qualified immunity "does so lest threat of liability 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Id.* at 757-758 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)).   "And, it reflects the concern that 'society as a whole,' without that immunity, would have to bear 'the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office.'" *Id.* at 758 (quoting *Harlow*, 457 U.S. at 814).   Of course, these "policy justifications" apply only to government officials carrying out governmental functions, not to a private party claiming a good-faith defense, as is the case here. *See Wyatt v. Cole*, 504 U.S. 161, 167 (1992) (rejecting qualified immunity for private actors because "the reasons for recognizing such an immunity

221195338.2 95520/336552

1    were based not simply on the existence of a good faith defense at common law, but
2    on the special policy concerns involved in suing government officials.").

3         Under this trio of cases, *Janus* must apply retroactively "to all events"
4    predating the decision, including the Unions' collecting of fair-share fees from
5    Plaintiffs before June 27, 2018.   And, while "significant policy considerations"
6    allow government officials to rely on debunked case law for the limited purpose of
7    qualified immunity, those policy considerations do not apply to private actors, like
8    the Unions.

9    **II.    *Janus* renders Gov't Code § 3546 void *ab initio*.**

10        "An unconstitutional act is not a law; it confers no rights; it imposes no
11   duties; *it affords no protection*; it creates no office; it is, in legal contemplation, as
12   inoperative as though it had never been passed."   *Norton v. Shelby County*, 118
13   U.S. 425, 442 (1886) (emphasis added).   *Accord, e.g.*, *Journigan v. Duffy*, 552 F.2d
14   283, 289 (9th Cir. 1977); *Dascola v. Ann Arbor*, 22 F. Supp. 3d 736, 743 & n.4
15   (E.D. Mich. 2014).   Thus, in *Richardson v. U.S.*, 465 F.2d 844, 850 (3d Cir. 1972)
16   (*en banc*), *rev'd on other grds.*, 418 U.S. 166 (1974), the court held that a party
17   cannot base its defense on an unconstitutional statute – "Such a defense would
18   have the effect of sustaining the very statute which the court is asked to strike as
19   unconstitutional."

20        In *Reynoldsville Casket*, Justice Scalia opined that "what a court does with
21   regard to an unconstitutional law is simply to *ignore* it."   *Reynoldsville Casket*, 514
22   U.S. at 760 (Scalia, J., concurring).   "[A] law repugnant to the Constitution 'is
23   void, and is as no law.'"   *Id.* (quoting *Ex parte Siebold*, 100 U.S. 371, 376 (1880)).
24   "Thus, if a plaintiff seeks the return of money taken by the government in reliance
25   on an unconstitutional tax law, the court ignores the tax law, finds the taking of the
26   property therefore wrongful, and provides a remedy."   *Id.*  This rule applies equally
27   to the Unions' taking of Plaintiffs' money.

28

221195338.2 95520/336552

**III.    Under the declaratory theory of law, the Unions' supposed reliance on**
**        *Abood* does not protect them.**

In *James B. Beam*, Justice Souter opined that full retroactivity "reflects the declaratory theory of law, according to which the courts are understood only to find the law, not to make it." *James B. Beam*, 501 U.S. at 535-536 (Op. of Souter, J.) (citation omitted).   Justice Scalia explained this theory in his concurring opinion.   Citing *Marbury v. Madison*, 1 Cranch 137, 177 (1803), Justice Scalia opined that the Court has "the power 'to say what the law is,' not the power to change it." *Id.* (citation omitted).   Judges "make" law but only "*as judges make it*, which is to say *as though* they were 'finding' it—discerning what the law *is*, rather than decreeing what it is today *changed to*, or what it will *tomorrow be*." *Id.*

The declaratory theory of law applies here.   Per *Janus*, the Constitution does not allow – and never did allow – California to force a public-sector employee to pay fair-share fees.   Such fees were always invalid.   Because *Abood* was mistaken in its construction of the Constitution, it is as though *Abood* never existed.

On page 17, the Attorney General asserts that "Plaintiffs appear to be making the argument, under a theory of retroactive liability, that their rights were implicitly vested when the Supreme Court issued *Janus*."   This is wrong because Gov't Code § 3546 did not *become* invalid on June 27, 2018; rather, it was *never* valid.   Thus, Plaintiffs' rights accrued each time the Unions collected fair-share fees from them.

On page 8 of his brief, the Attorney General cites *Davis v. U.S.*, 564 U.S. 229 (2011), for the proposition that "[a]cting in accordance with binding precedent is not wrongful behavior or a mistake of law."   This argument is doubly wrong. First, it is contrary to the declaratory theory of law.   Second, it is not what *Davis* actually held.

*Davis* involved whether to apply the exclusionary rule in a criminal case when the police had relied on a federal decision that the Supreme Court later overruled.   Suppression of evidence is not required to remedy a Fourth Amendment violation; rather, the exclusionary rule is a "prudential" doctrine, whose "sole purpose is to deter future Fourth Amendment violations.  *Id.* at 236-237.  So "real deterrent value is a necessary condition for exclusion."  *Id.* at 237 (cleaned up).  Thus, "when the police act with an objectively 'reasonable good faith belief' that their conduct is lawful, … the deterrence rationale loses much of its force, and exclusion cannot pay its way."  *Id.* at 238 (cleaned up).

In sum, *Davis* applies only in criminal cases involving the exclusionary rule; it is inapposite here.  The present case asks the Court to restore to Plaintiffs their property that the Unions unconstitutionally have taken from them; deterrence of future bad acts is not the point of Plaintiffs' claims.

## IV.   Gov't Code § 1159 is unconstitutional.

Plaintiffs' response to the Unions' motion outlines some of the reasons Gov't Code § 1159 is unconstitutional.  Plaintiffs supplement that argument in response to the Attorney General's arguments.[2]

### A.   Gov't Code § 1159 changed the law.

The Attorney General is cognizant of the troubling constitutional infirmities that arise if Gov't Code § 1159 *changed* the law retroactively.  Thus, he devotes substantial effort trying to argue that § 1159 clarified, rather than changed, the law.  That effort is wasted.

All of the cases the Attorney General cites involve the Legislature explaining what is meant in an *existing* statute.  No such explaining exists here.

---

[2]   The Unions argue (page 15) that Plaintiffs accepted employment on the condition that they would have to pay agency fees.  This is a not a good argument for the Unions.  "States cannot condition public employment on the waiver of constitutional rights[.]"  *Chavez v. Martinez*, 538 U.S. 760, 768 n.2 (2003) (Op. of Thomas, J.).

221195338.2 95520/336552

Gov't Code § 1159 does not explain or otherwise change the wording of a previously enacted statute – not Gov't Code § 3546 or any other statute.  Instead, § 1159 purports to give the Unions an absolute defense against Plaintiffs' state-law claims to recover fair-share fees collected before June 27, 2018.  The statute did not clarify anything; it improperly attempted to immunize the Unions from *Janus* retroactivity.

The Attorney General admits as much when describing Gov't Code § 1159.  On page 11 of his brief, he explains that "the Legislature, through section 1159, eliminated any liability that may have existed under state law with respect to agency-fee claims against unions" and that "California has eliminated the cause of action that is the basis of Plaintiffs' claims[.]"  A legislative act that *eliminates* liability and *eliminates* a cause of action is *not* a clarification of the law.

### B.    The Attorney General misquotes *Landgraf*.

On page 10, the Attorney General misquotes *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994), indicating that the sentence ended with "modest."  The Supreme Court's full sentence was:  "But while the *constitutional* impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule."  The Attorney General also ignores that *Landgraf* specifically held that retroactive legislation faces constitutional impediments, including (among others) the Due-Process and Takings Clauses.  *Id.* at 266.

### C.    The Attorney General's attempt to distinguish *Logan* is futile.

In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-430 (1982), the Supreme Court held that a right of action is constitutionally protected property and that a state violates the Due Process Clause by denying a party the opportunity to be heard on that claimed right.  The Attorney General is right to be concerned about *Logan*.  But his response – that *Logan* is distinguishable because it involved a state actor who failed to comply with statutorily-mandated procedures – is

1    wrong.  The principles at the heart of *Logan* are not limited to a state actor's failure

2    to follow procedures, and the Attorney General has not even attempted to explain

3    why this distinction should render *Logan*'s holding inapplicable to Plaintiffs'

4    claims.  Moreover, the Attorney General's argument does not apply to the other

5    cases Plaintiffs cite in footnote 90 of their response to the Unions' motion – cases

6    that compel the same principles that are at the heart of *Logan*.  *See also Tulsa*

7    *Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) (intangible interest

8    in a cause of action is property that the due-process clause protects).

9    Citing *Logan*, the Attorney General also argues (page 11) that the legislative

10   process provides all the process due when a legislature "eliminate[s] its statutorily

11   created causes of action[.]"  *Logan*, 455 U.S. at 432.[3]  This argument is misplaced.

12   First, this part of *Logan* does not deal with retroactive legislation but rather only

13   with a state's right to modify or eliminate state programs, such as welfare or

14   employment.  That is, the state does not have to provide a hearing to every

15   program participant when the state wants to modify or eliminate a government

16   program; the legislative process is sufficient.  *Id.* at 432-433.  Second, this part of

17   *Logan* is limited to "statutorily created rights."  The distinction between

18   statutorily-created claims and common-law claims is significant under California

19   law.  *Callet v. Alioto*, 210 Cal. 65, 67 (1930).  Third, *Logan* supports this statement

20   by quoting *Martinez v. California*, 444 U.S. 277, 432-433 (1980), which involved

21   a statutory change to a statutory claim under the California Tort Claims Act.  Plus,

22   *Martinez* did not involve the retroactive application of a statute at all; the immunity

23   statute in *Martinez* took effect in 1963, more than a decade before the alleged

24   wrong was done.

25

26

27   [3]  The Attorney General repeats this argument on page 13, citing *Jenkins v.*
     *County of Los Angeles*, 74 Cal. App. 4th 524, 537 (1999).

28

221195338.2 95520/336552

**D.    The Attorney General's reliance on *Ileto* is misplaced.**

On pages 12 and 14-16, the Attorney General relies on *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), *cert denied*, 560 U.S. 924 (2010).  Plaintiffs have addressed *Ileto* in their response to the Unions' motion and will not repeat that argument here.  Needless to say, *Ileto* has many problems beyond the fact that it ignores California law, which governs the existence of a constitutionally-protected interest.  Plaintiffs point out here only that the Attorney General's assertion (page 16) that "the Supreme Court itself clearly did not view *Ileto* as contradicting its prior holdings, because it declined the petition for writ of certiorari in that case" is inaccurate.  "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case."  *U.S. v. Carveri*, 260 U.S. 482, 490 (1923).

**E.    The Attorney General's attempts to distinguish Plaintiffs' California cases are misplaced.**

On pages 13-14, the Attorney General says Plaintiffs' California cases are distinguishable because many involve legislation shortening a statute of limitations.  It is mystifying to suggest that Gov't Code § 1159 – which purports to outright block Plaintiffs' claims – is somehow *less* offensive to due-process protections than legislation that merely shortens the statute of limitations.  Anyway, not all of Plaintiffs' cases involved the shortening of a statute of limitations.  *Vegetable Oil Prods. Co. v. Superior Court*, 213 Cal. App. 2d 252, 258 (1963), held that a statute that abolishes an already-accrued right of action is unconstitutional.   And, while *California Employment Stabilization Comm'n v. Payne*, 31 Cal.2d 210, 215 (1947), *Wells Fargo & Co. v. City and County of San Francisco*, 25 Cal.2d 37, 41 (1944), and *Rosefield Packing Co. v. Superior Court*, 4 Cal.2d 120, 141 (1935), all involved changes in a statute of limitations, each one held that a change that immediately cuts off an already-accrued right of action is unconstitutional.

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

221195338.2 95520/336552

The Attorney General's reliance on *Hung v. Wang*, 8 Cal. App. 4th 908, 921 (1992), is misplaced.  While *Hung* provides that the Legislature decides what is and what is not an actionable tort, the case did not involve a statute applied retroactively.  Instead, the case involved a statute that merely imposed a procedural requirement the plaintiff needed to address before suing, not outright elimination of a claim.  (Incidentally, *Hung*'s due-process analysis relies on *Logan*.)

The Attorney General's reliance on *In re Marriage of Buol*, 39 Cal.3d 751 (1985), is also misplaced because the court held a new statute was unconstitutional.  Two aspects of *Buol* are especially notable.  First, the court fully endorsed *Vegetable Oil Prods.*, which held unconstitutional a statute that cut off an existing remedy.  *Id.* at 759-760.  Second, the court held that the statute violated due process because it only minimally served a state interest (equitable division of marital property) but mainly affected private disputes.  *Id.* at 761.  The same is true here.

**F.      *Los Angeles County v. Superior Court* does not change the outcome.**

The Attorney General and the Unions argue that *Los Angeles County v. Superior Court*, 62 Cal.2d 839 (1965), effectively overruled *Callet* insofar as *Callet* distinguishes between statutory claims and common-law claims.  Inasmuch as more recent cases continue to cite favorably *Callet* and the distinction it draws, *Callet* remains controlling law.  *E.g., Governing Bd. of Rialto Unified Sch. Dist.*, 18 Cal.3d 819, 829 (1977); *Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 998 (S.D. Cal. 2016).  Regardless, *Los Angeles County* questioned *Callet*, observing that "[w]e find no constitutional basis for distinguishing statutory from common-law rights merely because of their origin."  *Los Angeles County*, 62 Cal.2d at 844 (citing 5 Cal. Law Revision Comm'n Rep. 526, and *Flournoy v. California*, 230 Cal.App.2d 520, 531 (1964).  To better understand *Los Angeles County*, it is

221195338.2 95520/336552

necessary to examine the authority the court cited: the Law Revision Commission's report and *Flournoy*.

### 1. The Law Revision Commission's report supports Plaintiffs.

The Law Revision Commission prepared a report in connection with the 1963 legislation that created statutory governmental immunity after the California Supreme Court held common-law immunity unconstitutional and the Legislature enacted a moratorium on claims against the government until the new statutes were enacted. The Commission questioned the distinction *Callet* drew between statutory claims and common-law claims. Specifically, the Commission pointed out that, even in the context of statutory claims, on at least two occasions, courts refused to apply a new statute that would have destroyed a "vested" statutory claim. 5 Cal. Law Revision Comm'n Rep. 528-529 (citing *Norton v. City of Pamona*, 5 Cal.2d 54 (1935), and *Wexler v. City of Los Angeles*, 110 Cal.App.2d 740 (1952)). In other words, the Commission did not question *Callet* because *Callet* over-protected common-law claims but rather because it *under*-protected statutory claims. After reviewing these cases and finding *Callet* "exceedingly formal," the Commission stated its conclusions.

The Commission concluded that causes of action arising during the moratorium period could be retroactively impaired. "It is exceedingly doubtful, however, whether the Legislature could constitutionally impair or destroy retroactively most other tort causes of action previously accrued." *Id.* at 530. Indeed, the Commission opined that "causes of action (whether recognized by statute or grounded in common law doctrine) accruing before [California's common-law immunity was declared unconstitutional] *may not be validly abolished* in connection with enactment of a general legislative program relating to governmental tort liability." *Id.* at 531 (emphasis added). Thus, the Commission (and implicitly the court) expanded *Callet* by protecting statutory claims (in

11

addition to common-law claims) from retroactive legislation, rather than contracting the protection given to common-law claims.

The Commission further opined that, short of outright blocking claims, which would have been unconstitutional, the Legislature could legitimately "devis[e] substantial, but not insurmountable, procedural requirements applicable thereto.  For example," the Commission continued, "it seems reasonably clear from the cases that the Legislature constitutionally could provide that all such previously accrued causes of action would be totally barred unless action thereon were commenced within a reasonably short period of time following the enactment of the statutory bar."  *Id.* at 537.  Plaintiffs agree; at a minimum, the Legislature had to provide a window of opportunity to sue before Gov't Code § 1159 could take effect.

Thus, the Law Revision Commission's report, which is the basis of *Los Angeles County*'s disagreement with *Callet*, actually bolsters Plaintiffs' position that giving § 1159 immediate, retroactive effect is unconstitutional.

## 2. *Flournoy v. State* supports Plaintiffs.

Like the Commission, the court in *Flournoy v. State*, 230 Cal.App.2d 520 (1964), began its analysis by noting prior cases (*Wells Fargo* and *Wexler*) in which courts had refused to apply retroactive legislative to an accrued cause of action without considering the *Callet* rule.  *Id.* at 532.  The court noted that judges and legal writers had struggled to find an all-encompassing rule to apply; ultimately, the court adopted a test Charles Hochman proposed in *Harvard Law Review*, which focuses on a few factors:  "'the nature and strength of the policy interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters.'"  *Id.* (quoting Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 HARV.L.REV. 692, 697 (1960)).

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

221195338.2 95520/336552

Applying these factors to Gov't Code § 1159 shows that the law is unconstitutional as applied to Plaintiffs.  Regarding factor one, § 1159's policy interest is decidedly weak because the law seeks to protect unions in a dispute between two private parties.  The second factor weighs decidedly in Plaintiffs' favor as well.  As the Law Revision Commission showed, "substantial, but not insurmountable, procedural requirements" might be valid.  But § 1159 created an "insurmountable" barrier.  Finally, the nature of the right – Plaintiffs' right to their own money, which the Unions unconstitutionally confiscated – again supports Plaintiffs.  The Unions had no legitimate right to the money because good faith reliance is not a defense to Plaintiffs' state-law claims and, as *Janus* shows, the Unions did not act in good faith anyway.  *Janus*, 138 S. Ct. at 2895.

> **3.**   **The Attorney General and the Unions point to no supportive California case law.**

Plaintiffs point to numerous cases highlighting Gov't Code § 1159's constitutional infirmities.  Neither the Attorney General nor the Unions points to even one state case upholding a statute that retroactively precludes an accrued right of action without providing an opportunity to assert the claim or leaving an alternative remedy available.

> **G.**   **Gov't Code § 1159 violates substantive due process.**

Substantive due process prohibits the state from taking Plaintiffs' money without their consent and giving that money to the Unions.  *See Missouri P. Ry. Co. v. Nebraska*, 164 U.S. 403, 417 (1896), and the other cases cited in footnote 102 of Plaintiffs' response to the Unions' motion.  The Attorney General argues (page 19) that *Missouri P. Ry.* does not apply because the present case is a First Amendment case, not a property case.  He misses the point.  The Unions now have Plaintiffs' *property* as a result of the First Amendment violation; that is, it is the First Amendment that makes the state's forced transfer of money from

221195338.2 95520/336552

Plaintiffs to the Unions illegal.  Further, the Attorney General's reliance on *Ileto* in connection with the substantive due-process argument is misplaced because *Ileto* did not involve a forced transfer of property as this case does.[4]

### H. The Takings Clause operates independent of due process.

Plaintiffs argue alternatively that Gov't Code § 1159 operates as an unconstitutional taking of their property.  On page 19, the Attorney General asserts that a takings claim cannot prevail unless Plaintiffs establish a due-process violation.  Not so.  The Due Process Clause and the Takings Clause are independent challenges, the former seeking to stop the enforcement of § 1159 against Plaintiffs' claims and the latter assuming that the statute is allowed to be enforced against the claims.  *See Landgraf*, 511 U.S. at 266.

### I. Gov't Code § 1159 violates Cal. Const., art. IV, § 9.

Cal. Const., art. IV, § 9 provides in pertinent part:  "A statute shall embrace but one subject, which shall be expressed in its title."  This provision imposes two separate requirements:  "A statute must comply with both the requirement that it be confined to one subject and with the command that this one subject be expressed in its title."  *Harbor v. Deukmejian*, 43 Cal.3d 1078, 1096 (1987).  Gov't Code § 1159 violates both requirements.

"'The single-subject rule … is a constitutional safeguard adopted to protect against multifaceted measures of undue scope.'"  *Id.* at 1099 (quoting *Brosnahan v. Brown*, 32 Cal.3d 236, 253 (1982)).[5]  While the Legislature has some discretion in joining sections in a single act, that discretion is limited.  In *Harbor*, the legislation addressed a variety of subjects, including:

---

[4]   The remainder of the Attorney General's arguments in his section on substantive due process actually relate to Plaintiffs' procedural due-process arguments and are addressed in other parts of this response.

[5]   "[T]he same principles apply to the single subject rule relating to initiatives as to legislative enactments."  *Harbor*, 43 Cal.3d at 1098.

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

- Section 0.2 amended the Business & Professionals Code to require submission of certain reports;
- Section 0.4 amended the same code to allow the Contractors' State License Board to disclose complaints against licensees;
- Section 28.4 amended the Military & Veterans Code related to the guardians of a veteran's estate; and
- Section 66.7 allowed concession contracts for state parks to exceed 20 years.

The court struck down the legislation because these subjects were neither functionally related nor germane to one another.  *Id.* at 1100.

The disparate nature of the provisions was not saved by giving "a broad label to a measure and then claiming that its provisions are encompassed under that wide umbrella."  *Id.* at 1099 n.22.  "[T]he rule obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as 'government' or 'public welfare.'"  *Id.* at 1099 (quoting *Brosnahan*, 32 Cal.3d at 253).  Other examples of subjects that are too broad are "property," "women," "public welfare," and "the pursuit of happiness."  *Id.* at 1099 n.22.  On this basis, the court struck down as too broad legislation with the title "Fiscal affairs" and "statutory adjustments" as its object, invalidating the bill.  *Id.* at 1100-1101.

The Attorney General has filed the initial and final versions of Senate Bill 846, by which § 1159 was enacted.  *See* Dkt. #174, Page ID ## 874-895.  The initial version, introduced in January 2018 (more than six months before the Supreme Court decided *Janus*), has a single section:  "SECTION 1.  It is the intent of the Legislature to enact statutory changes relating to the Budget Act of 2018."  By August 2018, when the final version of SB 846 took shape, it was given the title "Committee on Budget and Fiscal Review. Employment" and stated as its object:  "An act to amend Sections 1159, 19230, 19232, 19236, 19237, and

RESPONSE TO THE ATTORNEY GENERAL'S OPENING BRIEF

221195338.2 95520/336552

31552.5 of the Government Code, to amend Section 101853.1 of the Health and Safety Code, and to add Section 10298.1 to the Public Contract Code, relating to employment, and making an appropriation therefor, to take effect immediately, bill related to the budget."  SB 846 had ten sections:

- **Section 1** added Gov't Code § 1159, purportedly providing a defense for suits seeking a refund of unconstitutionally confiscated fair-share fees.

- **Sections 2-5** amended Gov't Code §§ 19230, 19232, 19236, and 19237 with respect to state government's hiring of disabled persons, and **Section 8** added Public Contract Code § 10298.1 related to reasonable-accommodation purchases for disabled persons.

- **Sections 6 and 7** amended Gov't Code § 31552.5 and Health & Safety Code § 101853.1 regarding the Kern County Employees' Retirement Association.

- **Section 9** appropriated $1,371,000 "for purposes of expanding, or supporting existing, apprenticeship programs and activities, which appears wholly unrelated to the other subjects of SB 846.

- **Section 10** provided that the act "shall take effect immediately" because the bill included an appropriation (in Section 9).

SB 846 is invalid under Cal. Const., art. IV, § 9 for two reasons.  First, as in *Harbor*, the first four bullet points are not reasonably germane to each other; certainly, Section 1 is not germane to *any* of the other provisions, let alone all the other provisions.  For this reason alone, SB 846 encompassed multiple subjects and is unconstitutional.  SB 846 should have been enacted as at least four separate bills (Section 1;  Sections 2-5  and  8;  Sections 6-7;  and  Section 9).    Second, this deficiency is not saved by the excessively broad title "Employment."  As *Harbor* makes clear, such a subject is too broad to satisfy the single-subject requirement.

1 | Further, the Legislature's motive for violating Cal. Const., art. IV, § 9 is
2 | obvious. Cal. Const., art. IV, § 12(e) allows the budget bill and certain other bills
3 | providing for appropriations related to the budget bill to take effect immediately.
4 | Because the Legislature wanted § 1159 to take effect immediately – with
5 | retroactive application – the Legislature included it with the spending
6 | appropriation in Section 9 for apprenticeship programs and activities. This
7 | appropriation has absolutely nothing to do with Gov't Code § 1159. Thus, SB 846
8 | not only violates the express limitation of Cal. Const., art. IV, § 9, it also violates
9 | Cal. Const., art. IV, § 12(e) by allowing § 1159 to take effect immediately.

**J.  Gov't Code § 1159 violates the separation-of-powers doctrine.**

Gov't Code § 1159 effectively denies Plaintiffs a judicial forum to assert their state-law claims. For the reasons stated in *In re National Sec. Agency Telecomm. Records Litig.*, 671 F.3d 881, 899 (9th Cir. 2011), this violates the separation-of-powers doctrine.

**CONCLUSION**

For all these reasons, as well as those stated in Plaintiffs' response to the Unions' motion and the reasons advanced in the related cases, Plaintiffs respectfully request that this Court deny the Unions' motion to dismiss Plaintiffs' amended complaint.

Dated:  March 1, 2019          CLARK HILL LLP


By: _____
            Bradford G. Hughes
Attorneys for Plaintiffs and Proposed Class